IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN P.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LELAND DUDEK, Acting | : | NO.  23-2601 |
| Commissioner of Social Security[2] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                 March 26, 2025

Plaintiff seeks review of the Commissioner's decision denying his application for

disability insurance benefits ("DIB").  For the reasons that follow, I conclude that the

decision of the Administrative Law Judge ("ALJ") is not supported by substantial

evidence and remand for further proceedings pursuant to sentence four of 42 U.S.C.

§ 405(g).

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on September 26, 2020, alleging disability

beginning on August 3, 2020,[3] as a result of prostate cancer, severe lower back pain

---

[1]Consistent with the practice of this court to protect the privacy interests of
plaintiffs in social security cases, I will refer to Plaintiff using his first name and last
initial.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D.
Pa. June 10, 2024).

[2]Leland Dudek was appointed as the Acting Commissioner of Social Security on
February 19, 2025.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
Mr. Dudek should be substituted as the defendant in this case.  No further action need be
taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42
U.S.C. § 405(g).

[3]To be entitled to DIB, Plaintiff must establish that he became disabled on or
before his date last insured ("DLI").  20 C.F.R. § 404.131(b).  The ALJ found and the

radiating down the right leg, high blood pressure, diabetes, foot bone and joint pain, weakness and tingling in the hands, frequent urination, irritable bowel syndrome ("IBS"), gastroesophageal reflux disease ("GERD"), and arthritis of the left hand.  Tr. at 91, 211-14, 245.  His application was denied initially, id. at 109-12, and on reconsideration, id. at 119-22, and he requested an administrative hearing.  Id. at 128-29.  After holding a hearing on May 26, 2022, id. at 44-61, the ALJ issued an unfavorable decision on June 29, 2022.  Id. at 14-37.  The Appeals Council denied Plaintiff's request for review on May 26, 2023, id. at 1-3, making the ALJ's June 29, 2022 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.  Plaintiff sought review in the federal court on July 7, 2023, Doc. 1, and the matter is now fully briefed.  Docs. 9, 11, 15.[4]

## II.    LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (quoting Rutherford v.

Certified Earnings Record confirms that Plaintiff was insured through December 31, 2025.  Tr. at 17, 241.

    [4]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 7.

Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97,

103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v.

NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.

Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.      Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.      If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5.      If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the

burden of proof at steps one through four, while the burden shifts to the Commissioner at

the fifth step to establish that the claimant is capable of performing other jobs in the local

and national economies, in light of his age, education, work experience, and RFC.  See

Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.    DISCUSSION

### A.    ALJ's Findings and Plaintiff's Claims

In her July 29, 2022 decision, the ALJ found at step one that Plaintiff has not

engaged in substantial gainful activity since August 3, 2020, his alleged onset date.  Tr. at

17.  At step two, the ALJ found that Plaintiff suffers from the severe impairments of

lumbar degenerative disc disease and prostate cancer status post robotic prostatectomy

without metastasis.  Id.[5]  At step three, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the severity of

one of the Listings.  Id. at 23.

---

[5]The ALJ found a number of Plaintiff's other conditions to be non-severe,
including major depressive disorder ("MDD"), obesity, diabetes, essential hypertension,
benign prostatic hyperplasia, hyperglycemia, neuropathy, migraine headaches,
Dupuytren's contracture, fecal urgency, GERD, diaphragmatic hernia, other specified
diseases of the esophagus, gastric polyps, gastritis, hiatal hernia, celiac sprue,
Helicobacter pylori, Barrett's esophagus, colon adenoma, bilateral hypermetropia,
bilateral astigmatism, presbyopia, and nodule on the index finger.  Tr. at 19, 20.  The ALJ
found that several complaints/impairments were not medically determinable, including
cervical and lumbar radiculopathy, fecal urgency, IBS/inflammatory bowel disease,
excessive anger, and migraine headaches.  Id. at 23.  I will address internal
inconsistencies in these findings when I turn to Plaintiff's claims.

The ALJ determined that Plaintiff retains the RFC to perform light work, limited to frequent balancing, crouching, kneeling, and climbing; occasional crawling and stooping; occasional exposure to extreme cold, fumes, gases, poor ventilation, and hazards such as unprotected heights and unprotected moving mechanical parts. Tr. at 25. Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform his past relevant work as a director of media marketing and as a director of outpatient services. Id. at 35. As a result, the ALJ concluded that Plaintiff is not disabled. Id. at 36.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly (1) account for Plaintiff's mental limitations in the RFC assessment, and (2) evaluate the medical opinion evidence. Doc. 9 at 12-21; Doc. 15 at 4-10.[6] Plaintiff also claims error in the Appeals Council's failure to grant review based on additional medical evidence submitted after the hearing. Doc. 9 at 10-12; Doc. 15 at 1-4.[7] Defendant responds that substantial evidence supports the ALJ's evaluation of the mental health evidence and the opinion evidence, Doc. 11 at 11-29, and that Plaintiff has failed to establish the criteria for a new evidence remand. Id. at 7-11.

---

[6]Pinpoint citations to the briefs in the case are to the court's ECF pagination. I have reordered Plaintiff's claims for ease of discussion.

[7]Plaintiff attached the relevant pages to his Brief and Statement of Issues. See Doc. 9-1 – 9-3. Defendant filed a supplement to the Administrative Record containing these pages. See tr. at 800-824 (Doc. 10-2).

**B.**    **Plaintiff's Claimed Limitations and Testimony at the Hearing**

Plaintiff was born on September 8, 1967, and thus was 52 at his alleged onset date (August 3, 2020), and 54 at the time of the ALJ's decision (July 29, 2022).  Tr. at 211. He completed college in 1989, id. at 247, and has past relevant work as an advertising director, director of media buying, and senior director of patient planning.  Id. at 58, 247.

At the administrative hearing, Plaintiff testified that he cannot work because he has neck, back, and hip pain, burning sensation in his feet and legs, fatigue, insomnia, urinary incontinence, IBS, and anxiety.  Tr. at 50-51.  Plaintiff explained that he suffers from sciatica that limits his sitting to 15-20 minutes and he rarely leaves the house due to urinary frequency.  Id. at 56.  In addition, the pain in his neck radiating into his arms limits his range of motion, so he is not comfortable driving.  Id. at 57.

A VE also testified also testified at the administrative hearing.  Tr. at 58-60.  The VE characterized all of Plaintiff's past relevant work as sedentary with a specific vocational preparation ("SVP") of 8.[8]  Id. at 58.  Based on the hypothetical posed by the ALJ with the limitations included in the ALJ's RFC assessment, see supra at 5, the VE testified that such an individual could perform any of Plaintiff's past relevant work.  Id. at 59.  If the person would be off task for 15% of the time, the VE testified that the person would not be employable.  Id. at 60.

---

[8]SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in the job.  An SVP of 8 means that it takes from 4-10 years to learn the job. See https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/An%20Explanation%20of%20SVP.pdf (last visited Feb. 27, 2025).

### C.    <u>Medical Evidence Summary</u>

After a biopsy performed on October 14, 2020, <u>tr.</u> at 325, Plaintiff was diagnosed

with prostate cancer, <u>id.</u> at 314, and underwent a prostatectomy on January 4, 2021.  <u>Id.</u> at

381-88.  Plaintiff's prostate-specific antigen ("PSA") level was thereafter undetectable,

<u>id.</u> at 428, 645, but he complained of urinary incontinence, for which he was referred for

pelvic floor physical therapy.  <u>Id.</u> at 645.[9]  In addition to urinary incontinence, Plaintiff

was also treated for long-standing fecal urgency with Imodium, and for GERD with

omeprazole.[10]  <u>Id.</u> at 496.

Plaintiff has diabetes for which he has been prescribed metformin.[11]  <u>Tr.</u> at 319.

On November 4, 2020, Joseph F. Bagnick, M.D., Plaintiff's primary care provider,

diagnosed Plaintiff with neuropathy and began gabapentin.[12]  <u>Id.</u> at 320.  On February 4,

2021, at a follow up appointment, Plaintiff complained of depression, back pain, anxiety,

---

[9]Plaintiff explained at the hearing that he attended only one physical therapy session because the expense was cost-prohibitive.  <u>Tr.</u> at 51; <u>see also</u> <u>id.</u> at 614.

[10]Imodium is used to treat diarrhea for quick relief and to help control symptoms. <u>See</u> https://www.drugs.com/imodium.html (last visited Mar. 7, 2025).  Omeprazole is used to treat excess stomach acid in conditions including GERD.  <u>See</u> https://www.drugs.com/omeprazole.html (last visited Mar. 7, 2025).

[11]Although treatment notes indicate that Plaintiff is taking metformin, <u>see</u>, <u>e.g.</u>, <u>tr.</u> at 319, it is unclear which of Plaintiff's treatment providers prescribes the medication. <u>See</u> <u>id.</u> at 248 (Disability Report indicating Plaintiff does not know who prescribes Metformin for him).  Metformin is an antidiabetic agent that manages high blood sugar levels in type 2 diabetes patients by reducing glucose absorption from the intestines, lowering liver glucose production, and improving insulin sensitivity.  <u>See</u> https://www.drugs.com/ metformin.html (last visited Mar. 7, 2025).

[12]Gabapentin is used to treat nerve pain.  <u>See</u> https://www.drugs.com/gabapentin.html (last visited Mar. 7, 2025).

and IBS.  Id. at 439.  The doctor diagnosed Plaintiff with a moderate episode of MDD

and prescribed escitalopram,[13] noting that the antidepressant might also help with the

IBS.  Id.  At a follow up appointment on April 28, 2021, Dr. Bagnick diagnosed

excessive anger in addition to moderate MDD and increased the dosage of escitalopram.

Id. at 533.  The doctor also noted that Plaintiff's neuropathy and diabetes were stable on

current treatment.  Id. at 532.  On May 14, 2021, Dr. Bagnick removed a piece of glass

from Plaintiff's right foot.  Id. at 527.  The doctor's notes indicate that Plaintiff's

neuropathy was stable on medication and his diabetes was well controlled on medication.

Id.

On November 5, 2020, Plaintiff consulted with orthopedist Victor Hsu, M.D., at

Rothman Orthopaedics, for complaints of low back pain and right leg pain that began

several months earlier.  Tr. at 362.  On examination, Dr. Hsu noted 5/5 strength in both

lower extremities and good range of motion of the lumbar spine.  Tr. at 362-63.  X-rays

revealed degenerative changes at L4-5, and the doctor ordered an MRI.  Id. at 363.

On March 23, 2021, Plaintiff returned to Rothman for a mass on his left index

finger causing discomfort intermittently.  Tr. at 441.  Gregory Gallant, M.D., diagnosed

Plaintiff with Dupuytren's contracture[14] of both hands and left index finger pain, for

which no treatment was planned other than observation.  Id. at 442.

---

[13]Escitalopram is an antidepressant.  See https://www.drugs.com/escitalopram.html (last visited Mar. 7, 2025).

[14]Dupuytren contracture is the flexion contracture (fixed resistance to passive stretch) of a finger caused by shortening, thickening, and fibrosis of the palmar fascia. Dorland's Illustrated Medical Dictionary, 32nd ed. (2012) ("DIMD"), at 410.

On January 12, 2022, Plaintiff consulted with Gary Muller, M.D., for low back pain radiating into both legs.  Tr. at 584.  Plaintiff also had numbness and tingling in both feet and both hands.  Id.  The doctor noted grip weakness on the left and reduced left knee jerk.  Id.  According to Dr. Muller, EMGs confirmed chronic left C5 radiculopathy, left L5 radiculopathy, and axonal sensory polyneuropathy.  Id.  The doctor also noted that an MRI of Plaintiff's lumbar spine showed disc herniation at L5-S1 indenting the thecal sac and herniation at L4-L5.  Id.  Dr. Muller increased Plaintiff's gabapentin and added meloxicam and Zanaflex.[15]  Id.  If the medications did not "get him comfortable and get him progressing," the doctor would consider epidural injections.  Id. at 585.

On January 20, 2022, Plaintiff saw Dr. Bagnick for a diabetic check up.  Tr. at 759.  The doctor noted that Plaintiff's diabetes, prostate cancer, hypertension, neuropathy, lumbosacral spinal stenosis, and weight were stable, and continued Plaintiff's then-current treatment regimen.  Id.

Dr. Bagnick completed a Medical Source Statement ("MSS") on August 3, 2021, noting diagnoses of sciatica, IBS, diabetes, prostate cancer, spinal stenosis, and depression.  Tr. at 513.  The doctor found that Plaintiff could sit for 2 hours and stand/walk for 1 hour in an 8-hour workday, alternating every 15 minutes.  Id.  In addition, the doctor found Plaintiff could occasionally lift and carry 10 pounds, rarely

---

[15]Meloxicam is a nonsteroidal anti-inflammatory drug which reduces hormones that cause pain, fever, and inflammation in the body.  It is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis.  See https://www.drugs.com/meloxicam.html (last visited Mar. 7, 2025).  Zanaflex is a short-acting muscle relaxer which works by blocking nerve impulses sent to the brain.  See https://www.drugs.com/zanaflex.html (last visited Mar. 7, 2025).

reach or feel, and would frequently experience symptoms that would interfere with attention and concentration needed to perform even simple work tasks.  Id. at 513-14. Dr. Bagnick also opined that Plaintiff would require unscheduled 15 minute breaks hourly, 15 minute reclining breaks hourly, and 15 minute bathroom breaks hourly, and would be absent more than 4 days per month.  Id. at 514.  In the office treatment notes for the same day, Dr. Bagnick noted that Plaintiff was "[u]nable to work due primarily [to] chronic back pain [requiring] very frequent changes in position and fatigue and depression."  Id. at 522.

Dr. Muller completed an MSS on January 24, 2022, noting diagnoses of cervical and lumbar radiculopathy and degenerative joint disease of the cervical and lumbar spine. Tr. at 587.  The doctor indicated Plaintiff could sit for 2-4 hours and stand/walk for 2 hours in an 8-hour workday alternating position every 30 minutes.  Id.  In addition, Dr. Muller noted that Plaintiff could occasionally lift less than 10 pounds, rarely reach and handle, and that his symptoms would occasionally interfere with the attention and concentration needed to perform simple work tasks.  Id. at 588.  Dr. Muller indicated that Plaintiff's impairments would cause him to miss work 3 days per month.  Id.

On April 12, 2021, Ziba Monfared, M.D., conducted a consultative internal medicine examination, noting diagnoses of stage 2 prostate cancer status post prostatectomy, chronic back pain with no radiculopathy during the exam, diabetes, paresthesia affecting feet and hands, hypertension, migraine headaches, and a history of Dupuytren's contracture of the left hand.  Tr. at 451.  On examination, Plaintiff had a normal gait, declined to walk on heels and toes due to fear of falling, and his squat was

10

50% of normal.  Id. at 450.  The straight-leg raising test was negative bilaterally,[16] with a

normal musculoskeletal exam, normal grip strength, and intact hand and finger dexterity.

Id. at 451, 461.  The doctor noted reduced range of motion in Plaintiff's lumbar spine.  Id.

at 463.  Dr. Monfared completed an MSS, finding Plaintiff could frequently lift and carry

20 pounds, sit for 8 hours and walk and stand for 7 hours each in 4-hour intervals in an 8-

hour workday, never climb ladders or scaffolds or balance, and was unable to walk a

block at a reasonable pace on rough or uneven surfaces.  Id. at 453-58.

On April 12, 2021, Kyle Elizabeth Culver, Psy.D., conducted a Mental Status

Evaluation, noting diagnoses of MDD, recurrent episodes moderate and generalized

anxiety disorder ("GAD").  Tr. at 470.  The doctor noted that Plaintiff's thought

processes were clear, his affect was depressed, mood was anxious and dysthymic, and his

attention and concentration and recent and remote memory skills were intact.  Id. at 469.

The doctor noted that Plaintiff was able to count by 2s, complete simple calculations,

complete the serial 7s, recall objects immediately and after a delay, and could repeat 6

digits forward and 4 backward.  Id.  The doctor further noted that Plaintiff reported that

he could not manage his own funds because his wife did this.  Id. at 471.  Based on her

examination, the doctor found Plaintiff had no limitations in his ability to understand,

---

[16]The SLR test checks for impingement of the nerves in the lower back by
determining whether there is pain when "the symptomatic leg is lifted with the knee fully
extended; pain in the lower extremity between 30 and 90 degrees of elevation indicates
lumbar radiculopathy, with the distribution of the pain indicating the nerve root
involved."  DIMD at 1900.

remember, and carry out instructions, and moderate limitation in his ability to interact

appropriately with others, due to anxiety.  Id. at 472-73.[17]

On June 30, 2021, at the initial consideration stage, Gay Christina Gustitus, D.O.,

found from a review of the records that Plaintiff could occasionally lift and carry 20

pounds, frequently lift and carry 10 pounds, sit for 6 hours and stand/walk for 6 hours in

an 8-hour workday.  Tr. at 77-78.  The doctor also found Plaintiff should never climb

ladders, ropes, or scaffolds, had no manipulative limitations, and should avoid

concentrated exposure to extreme cold, wetness, noise, vibration, fumes, odors, dusts,

gases, and hazards.  Id. at 78-79.

On April 21, 2021, at the initial consideration stage, Paul Thomas Taren, Ph.D.,

found from his review of the records that Plaintiff had mild limitation in the ability to

understand, remember, or apply information; and moderate limitation in the abilities to

interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.

Tr. at 74.  Dr. Taren noted that Plaintiff was moderately limited in the abilities to

maintain attention and concentration for extended periods and complete a normal

workday and workweek without interruptions from psychologically based symptoms and

perform at a consistent pace without an unreasonable number and length of rest periods.

Id. at 83-84.  Dr. Taren explained that Plaintiff "is vulnerable to variable problems of

concentration or negative preoccupation, as well as uneven motivation in day-to-day

---

[17]With respect to interaction, the doctor checked both the "moderate" and "marked" boxes for limitations in Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting.  Tr. at 473.  The ALJ read this to mean a moderate to marked limitation in this area.  Id. at 33.

affairs, associated with depressive- and anxiety-related disorders [and] is also prone to distraction and problems of motivation secondary to pain and physical discomfort." Id. at 84.  The doctor also found Plaintiff was moderately limited in the abilities to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and respond appropriately to changes in a work setting.  Id. at 84-85.

On November 12, 2021, at the reconsideration stage, Llwellyn Antone Raymundo, M.D., found similar exertional limitations to Dr. Gustitus, but found no limitation in exposure to noise.  Tr. at 97-98.  In addition to the limitations found by Dr. Taren, Anthony A. Galdieri, Ph.D., found Plaintiff was moderately limited in the abilities to carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual, and accept instructions and respond appropriately to criticism from supervisors.  Id. at 101.  Dr. Galdieri concluded that Plaintiff was able to make simple decisions and follow short simple directions, his social and coping skills were functional, and he was able to adapt "albeit slowly" to basic job-related changes without special supervision.[18]  Id.

### D.    Evaluation of the ALJ's Decision

Before addressing the claims Plaintiff brought in his Brief and Statement of Issues, I note that there are numerous inconsistencies in the ALJ's decision that hamper review of the ALJ's RFC assessment.  For example, the ALJ indicates at one point in her

---

[18]As noted, Plaintiff submitted additional evidence to the Appeals Council, tr. at 2, and alleges that the Appeals Council erred by failing to grant review based on this evidence.  Doc. 9 at 10-12.  I will address this evidence when addressing this claim.

decision that Plaintiff's migraine headaches and fecal urgency are nonsevere, tr. at 19, but later states that Plaintiff's migraines and fecal urgency, along with numerous other impairments, are not medically determinable and thus need not be considered in determining Plaintiff's RFC.  Id. at 23.  The distinction between a non-severe impairment and an impairment that is not medically determinable is critical, because only the former must be considered in formulating the RFC assessment.[19]

Additionally, the ALJ included cervical and lumbar radiculopathy in the impairments that were not medically determinable, tr. at 23, which contradicts record evidence.  Dr. Muller specifically stated in his treatment notes from January 12, 2022,[20] that Plaintiff's December 2021 EMGs "confirmed a chronic left C5 radiculopathy and a left L5 radiculopathy."  Id. at 584.  The ALJ indicated that "[n]otwithstanding [Dr. Muller's treatment note] and reference to a lumbar MRI in [the Rothman treatment notes, see id. at 363], the undersigned is unable to assess the degree of abnormality seen on these studies because none was submitted into evidence."  Id. at 23.  The missing test

---

[19]Although the ALJ relies on Social Security Ruling 96-4p, which was rescinded in 2018, see https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-04-di-01.html (last visited Mar. 6, 2025), the governing regulations confirm that the ALJ will consider the medically determinable impairments – severe and nonsevere – in determining the RFC. 20 C.F.R. § 404.1545(a)(2); see also Godwin v. Kijakazi, Civ. No. 20-2421, 2022 WL 992736, at *5 (M.D. Pa. Apr. 1, 2022) ("in determining claimant's RFC 'the ALJ does not need to consider any alleged conditions that are not medically determinatble'") (quoting Switzer v. Comm'r of Soc. Sec., Civ. No. 18-16554, 2019 WL 5485526, at *6 (D.N.J. Oct. 24, 2019)).

[20]Dr. Muller's January 12, 2022 treatment notes were included in the record before the ALJ.  At the Appeals Council level Plaintiff provided additional records including the EMG studies and MRIs to which Dr. Muller referred in his January 12, 2022 treatment note.  Tr. at 803-04, 807-10.

results were not sufficient for the ALJ to reject the doctor's assessment.[21]  Moreover, the

absence of the test results impacted not only the ALJ's analysis of Dr. Muller's opinion,

see id. at 33 ("This opinion is not consistent with the other evidence of record, as it

overstates [Plaintiff's] limitations."), but also the ALJ's consideration of the symptoms

related to Plaintiff's radiculopathies, including reduced grip strength and weakness in his

upper arms, as part of determining his RFC.[22]

     These issues alone are sufficient to warrant remand.  In Burnett v. Commissioner

of Social Security, the Third Circuit held that remand was necessary when the ALJ

provided a "bare conclusion" that the claimant did not meet a step-three listed

impairment because the conclusory statement was "beyond meaningful judicial review."

220 F.3d 112, 119 (3d Cir. 2000).  Here, the contradictory statements by the ALJ put the

court in the same position.  It is unclear whether the ALJ considered Plaintiff's

radiculopathies and resulting limitations in considering the opinion evidence and

determining his RFC, precluding meaningful judicial review.

     I will now turn to Plaintiff's claims, the discussion of which will disclose

additional inconsistencies and confusion in the ALJ's decision.

---

[21]An ALJ may not substitute his own "credibility judgments, speculation or lay opinion" for that of the medical providers, and "may not make speculative inferences from medical reports."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

[22]The Appeals Council found that Plaintiff had not shown a reasonable probability that the radiology reports would change the outcome of the decision.  Tr. at 2.  But as noted, it appears that the absence of the radiology reports affected the ALJ's consideration of Dr. Muller's opinion, and thus may have impacted Plaintiff's RFC in light of the ALJ's finding that the radiculopathies were not medically determinable impairments.  See id. at 23.

Plaintiff's two substantive claims are intertwined.  Plaintiff claims that the ALJ's RFC is deficient because it failed to account for Plaintiff's mild mental limitations, which the ALJ found in considering the B criteria of the mental health Listings at step two of the sequential evaluation.  Doc. 9 at 12-18.  Plaintiff also complains that the ALJ failed to properly consider the opinion evidence with respect to Plaintiff's mental impairments.  Id. at 18-21.  Defendant responds that "an ALJ's finding on the broad areas of mental functioning does not categorically bind the ALJ in terms of the mental RFC assessment."  Doc. 11 at 23 (citing Hess v. Comm'r of Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019)).  Moreover, Defendant maintains that the medical opinions and prior administrative findings do not require mental limitations in the RFC.  Doc. 11 at 26-29.

Before turning to the ALJ's consideration of the opinion evidence, I note that the failure to include limitations in an RFC assessment to address mild limitations found in analyzing the B criteria at step two is not, per se, error.  The key is whether the ALJ adequately analyzed the functional limitations imposed (or not imposed) by a mental health impairment, even if that impairment was found non-severe or if there was a mild limitation in the areas of functioning listed in the B criteria of the relevant mental health listings at step two.  In Hess, the Third Circuit explained the interplay between the paragraph B criteria, which are considered at steps two and three of the sequential evaluation, with the later RFC analysis, which is done at step four.

> [N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three.  Those portions of the disability analysis serve distinct purposes and may be expressed in different ways.  When mental health is at issue, the functional limitation categories

are "used to rate the severity of mental impairment(s)[.]"
SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  While
obviously related to the limitation findings, the RFC is a
determination of "the most [a claimant] can still do despite
[his] limitations" "based on all the relevant evidence in [the]
case record."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1);
SSR 96-8p, at *2.  It "requires a more detailed assessment [of
the areas of functional limitation] by itemizing various
functions contained in the broad [function limitation]
categories[.]"  SSR 96-8p, at *4.  And, unlike the findings at
steps two and three, the RFC "must be expressed in terms of
work-related functions[,]" such as by describing the
claimant's "abilities to:  understand, carry out, and remember
instructions; use judgment in making work-related decisions;
respond appropriately to supervision, co-workers and work
situations; and deal with changes in a routine work setting."
Id. at *6.  In short, the findings at steps two and three will not
necessarily translate to the language used at steps four and
five.

Hess, 931 F.3d at 209.  The ALJ's failure to include limitations related to mental

impairments found nonsevere or imposing mild limitations at step two does not

necessarily result in error at step four.  See Brumfield v. Saul, Civ. No. 19-4555, 2020

WL 4934315, at *8 (E.D. Pa. Aug. 21, 2020) (affirming where ALJ found mild

limitations in paragraph B criteria at step two and RFC assessment did not include

limitations related to non-severe mental impairments); Northrup v. Kijakazi, Civ. No. 20-

412, 2022 WL 889968, at *4-5 (M.D. Pa. Mar. 24, 2022) (same).

Despite the differences between the analyses at steps two and four, the findings at

step two are nonetheless "'plainly relevant' to the ALJ's later step four analysis because

it involves 'the claimant's actual impairments.'"  Brumfield, 2020 WL 4934315, at *4

(quoting Hess, 931 F.3d at 209).  The step four determination must be made after a

narrative discussion that "'reflect[s] the claimant's particular impairments, including

17

those embodied in the functional limitation findings' from the earlier steps." Id. (quoting Hess, 931 F.3d at 209).

In Brumfield, in affirming the ALJ's decision not to include RFC limitations based on mild limitations in the paragraph B criteria, the the court determined that the ALJ properly considered the evidence regarding the claimant's mental health impairments, noting that such evidence was "sparse," "limited," and "overwhelmingly normal," 2020 WL 4934315, at *6, *8, and that the ALJ "understood [the] impact [of the claimant's mental health impairments] before determining [the claimant's] RFC and the related hypothetical." Id. Moreover, considering the sparsity of the mental health treatment evidence, the court found that, even if the ALJ's consideration of the mild paragraph B findings at step four was incomplete, any error was harmless." Id. at *6.[23]

Thus, review of the ALJ's RFC assessment requires scrutiny of the ALJ's consideration of Plaintiff's impairments and the resultant functional limitations, which includes review of the ALJ's analysis of the opinion evidence. The ALJ's consideration of medical opinion evidence is governed by regulations which focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

---

[23]Plaintiff relies on my decision in Vinokur v. Kijakazi, Civ. No. 22-5142, 2023 WL 5432497 (E.D. Pa. Aug. 23, 2023), in arguing that the failure to include RFC limitations related to mild limitations in the B criteria warrants remand. Doc. 9 at 14. Vinokur, however, was an uncontested remand request by the defendant and I noted that the paragraph B limitations were well supported in the record and the ALJ should "articulate why credibly established [psychiatric review technique] limitations were not accounted for in the RFC." Vinokur, at *2.

> prior administrative medical finding(s), including those from
> your medical sources.

20 C.F.R. § 404.1520c(a).  The regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factor including familiarity with other evidence in the record or an understanding of the disability program.  Id. § 404.1520c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  Id. § 404.1520c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  Id. § 404.1520c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. § 404.1520c(c)(2).

The basic rule is that "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or the wrong reason."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also

Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Plaintiff complains that the ALJ failed to adequately address the consistency of the mental health opinion evidence. Doc. 9 at 19. On review, I note that the ALJ's discussion of the mental health opinion evidence is not entirely clear and contains factual inaccuracies. With respect to Dr. Culver's opinion -- that Plaintiff had no functional limitations in his abilities to understand, remember and carry out instructions; and moderate limitations in all aspects of interaction – the ALJ found the opinion partially persuasive. Tr. at 33.

> This opinion is partially supported by Dr. Culver's explanation for her opinion. On mental status examination ["MSE"] by Dr. Culver, [Plaintiff's] affect was depressed ([tr. at 469]). [Plaintiff] reported that his mood was "anxious," and his mood appeared to by dysthymic and anxious. Otherwise, this [MSE] was within normal limits. [Plaintiff] was never diagnosed with or treated for a mental health condition prior to being diagnosed with moderate episode of major depression on April 28, 2021. There were no formal mental health evaluations other than the psychological consultative examination, and *the consultative examination limits are out of proportion to the objective findings*. [Plaintiff] was started on escitalopram on February 4, 2021 ([tr. at 771-72]) with no indication of response or how long he had taken it. Speech, thought process, and attention/concentration/memory all intact per the various providers, and [Plaintiff] is cooperative and calm. This opinion is also partially consistent with the other evidence of record. Based on the evidence discussed under finding 3 of this decision, the undersigned finds that [Plaintiff] has no limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace;

and no limitation in adapting or managing oneself.  Therefore
Dr. Culver's opinion is found to be partially persuasive.

Tr. at 33 (emphasis added).

The ALJ's recitation of the evidence is inaccurate and incomplete with respect to

Plaintiff's mental health treatment.  Dr. Bagnick first diagnosed Plaintiff with MDD on

February 4, 2021, and started him on escitalopram.  Tr. at 439.  Contrary to the ALJ's

assertion that there is no indication of Plaintiff's response to the medication or how long

he took it, Dr. Bagnick diagnosed Plaintiff with excessive anger on April 28, 2021, and

doubled the dosage of escitalopram.  Id. at 532-33.  Dr. Bagnick noted a depressed mood

and anxious appearance at a January 20, 2022 follow up and noted that Plaintiff

continued to take the increased dosage of escitalopram.  Id. at 759-60.  Thus, the ALJ's

consideration of Dr. Culver's assessment is flawed.

Next, the ALJ found Dr. Taren's opinion -- moderate limitations in the abilities to

maintain attention and concentration for extended periods, get along with coworkers or

peers without distracting them or exhibiting behavioral extremes, and respond

appropriately to changes in the work setting -- to be not persuasive.

> Dr. Taren opined that [Plaintiff] would be able to understand,
> recall, and carry out simple or even moderately complex
> instructions, and he would abide by a routine and endure the
> demands and changes in a stable, low-stress environment (tr.
> at 86]).  This opinion is generally not well supported by Dr.
> Taren's explanation for his opinion, which does not show
> [Plaintiff] to be as limited as Dr. Taren found [Plaintiff] to be.
> Dr. Taren also cited to the April 2021 psychological
> consultative examination.  Dr. Taren stated that examiner
> source statements, as provided by Dr. Culver in [the] report of
> April 2021, indicated no significant cognitive limitations but
> moderate to even marked limitations within the social

domain.  He reported that with regard to social functioning, these severity ratings conflicted with direct clinical observations.  They also conflicted in large part with [Plaintiff's] reported or apparent level of adaptive and social functioning.  *Dr. Taren stated that the examiner source statements appeared to overestimate the severity of impairment particularly with regard to [Plaintiff's] ability to respond appropriately to typical demands and changes in task-oriented settings.  This opinion is not consistent with the other evidence of record.*  Based on the evidence discussed under finding 3 of this decision, the undersigned finds that [Plaintiff] has no limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself.  Therefore, Dr. Taren's opinion is found to be not persuasive.

Tr. at 34 (emphasis added).

There seems to be an internal inconsistency in the ALJ's analysis of the opinion evidence.  At the same time the ALJ found that Dr. Culver's "limits are out of proportion to the objective findings," she concluded that Dr. Taren's assessment that Dr. Culver overestimated the severity of Plaintiff's impairment "is not consistent with other evidence of record."  Compare tr. at 33 (discussion of Dr. Culver's assessment, italicized supra at 20) with id. at 34 (discussion of Dr. Taren's assessment, italicized supra at 22).

The ALJ compounds this confusion with her discussion of Dr. Galdieri's reconsideration assessment, which the ALJ also found not persuasive.

State agency psychological consultant [Dr.] Galdieri . . . affirmed Dr. Taren's findings on reconsideration on November 12, 2021 ([tr. at 96, 102]).  This opinion is generally not well supported by Dr. Galdieri's explanation for his opinion.  Dr. Galdieri stated that [Plaintiff] had an extensive work history in a supervisory position but quit by August 2020 due to worsening medical conditions and

22

> chronic pain ([id. at 96]). He had no history of mental health
> services. His family doctor prescribed escitalopram to
> moderate symptoms of depression and anxiety. Dr. Galdieri
> cited to the psychological consultative examination
> completed in April 2021 at which [Plaintiff] reported his
> mood as "anxious," and his mood appeared to be dysthymic
> and anxious. Otherwise, this [MSE] was within normal
> limits. This opinion is found to be not consistent with the
> other evidence of record for the same reasons Dr. Taren's
> opinion is found to be not consistent with the other evidence
> of record. Therefore, Dr. Galdieri's opinion is found to be
> not persuasive.

Tr. at 34. The ALJ failed to recognize that Dr. Galdieri actually found Plaintiff more

limited than Dr. Taren found. In addition to the limitations found by Dr. Taren, Dr.

Galdieri found Plaintiff was moderately limited in the abilities to carry out detailed

instructions, perform activities within a schedule, maintain regular attendance and be

punctual, and accept instructions and respond appropriately to criticism from supervisors.

Id. at 101. With respect to concentration and persistence limitations, Dr. Galdieri

concluded Plaintiff was able to make simple decisions and follow short simple directions.

Id. The fact that the ALJ did not recognize or acknowledge that Dr. Galdieri opinion is

more restrictive than Dr. Taren's is concerning, especially when considering the

consistency factor in analyzing all of the mental health opinion evidence.[24]

---

[24]Although Defendant argues that the rating section of Dr. Galdieri's assessment is not an RFC assessment, Doc. 11 at 18 n.6, the responses in this section of the form "help determine the individual's ability to perform sustained work activities." Tr. at 82, 100. As such, the responses are relevant to an evaluation of the consistency of the medical opinions. See 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources . . . . the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

Moreover, Drs. Bagnick and Muller indicated that Plaintiff's pain and other symptoms would interfere with the attention and concentration needed to perform even simple work tasks. <u>Tr.</u> at 514 (Dr. Bagnick), 588 (Dr. Muller). Although the ALJ did not find either of these doctors' opinions persuasive, <u>id.</u> at 31-32, 33, the ALJ did not acknowledge these findings in reviewing the mental health opinion evidence, despite their relevance in determining Plaintiff's ability to maintain attention and concentration for extended periods.[25] This is significant in this case because Plaintiff was found capable of returning to his past positions which are considered skilled jobs. <u>Id.</u> at 58 (VE characterized Plaintiff's past work as sedentary with an SVP of 8); <u>see also</u> <u>Zirnsak</u>, 777 F.3d at 616 (SVP determines skill levels – skilled work corresponds to an SVP of 5-9).

Defendant argues that "the regulations do not require an ALJ to discuss the extent to which a particular medical opinion is consistent with *every* piece of record evidence," and the ALJ met her burden "by addressing the consistency of the opinions and findings submitted by Drs. Taren, Galdieri, and Culver, against the record as a whole." Doc. 11 at 20 (emphasis in original). Although the court does not endorse the necessity of a line-by-line comparison of the assessments provided by these doctors, as previously discussed, the ALJ misstated facts in considering Dr. Culver's opinion, mischaracterized Dr.

---

[25]Defendant suggests that Dr. Bagnick's conclusion that Plaintiff's pain and other symptoms would frequently interfere with his concentration is irrelevant in the analysis of Plaintiff's mental RFC because "Dr. Bagnick's statement focused on his physical impairments." Doc. 11 at 26 n.12. I reject the suggestion. RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a). Thus, if pain or another physical symptom impacts concentration, such a finding is relevant to the RFC determination.

Galdieri's assessment, and provided an analysis of Dr. Taren's assessment that was

inconsistent with her findings regarding Dr. Culver's assessment.[26]

## IV.    <u>CONCLUSION</u>

The ALJ's decision is not supported by substantial evidence.  The ALJ rejected

medical evidence regarding Plaintiff's radiculopathies despite an orthopedist's diagnosis

based on objective test results.  It is unclear how this error affected the ALJ's

consideration of the opinion evidence and the limitations included in the RFC

assessment.  With respect to the mental health evidence, although I agree that the

evidence is sparse, the ALJ misstated evidence and failed to recognize differences

between the agency consultants' conclusions.  Considering that the ALJ endorsed

Plaintiff's return to skilled employment, it is incumbent upon Defendant to consider the

mental health evidence and adequately explain the failure to include limitations in the

RFC to address even mild limitations found in the functional areas of the B Criteria.

An appropriate Order follows.

---

[26]Plaintiff also complains that the Appeals Council improperly declined to consider the evidence provided after the ALJ's decision.  Because I have found that remand is required pursuant to sentence four, I need not address Plaintiff's request for a sentence six remand.